UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRY HENNING,

      Plaintiff,

v.

RIVIAN AUTOMOTIVE, INC,
a Delaware corporation, and
RIVIAN AUTOMOTIVE, LLC, a
Delaware limited liability company,

      Defendants.

---

# COMPLAINT

For his Complaint against Defendants Rivian Automotive, LLC (hereinafter "Rivian, LLC") and Rivian Automotive, Inc. (hereinafter "Rivian, Inc."), Plaintiff Terry Henning says:

1. Plaintiff is an individual residing in the City of Plymouth, Wayne County, Michigan.

2. Upon information and belief, Rivian Inc. is a Delaware corporation with its principal place of business in the State of California.

3. Upon information and belief, Rivian, LLC is a Delaware limited liability company with its principal place of business in the State of California.

Upon information and belief, its sole member is Rivian Inc. or an entity owned by Rivian Inc.

4. This Court has jurisdiction over this case through diversity of citizenship under 28 U.S.C. §1332 because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

5. Under the terms of the relevant agreements, venue is proper because the parties have agreed that any litigation is to be commenced in state or federal court in Wayne County, Michigan.

6. Henning is a veteran automotive manufacturing manager, working for Ford Motor Company for over 31 years, ultimately as North American Stamping Engineering Manager. He retired from Ford in January 2019.

7. Both Rivian Inc. and Rivian LLC are privately held companies actively developing all-electric vehicles for commercial and consumer use. Upon information and belief, Rivian has attracted a substantial capital investment from companies such as Amazon and Ford Motor Company, and has an order from Amazon to produce all-electric commercial vehicles for Amazon in 2020.

8. In order to move its projects forward, in February 2019, Defendants approached Henning through Mark Vinnels, its Executive Director

Kotz Sangster Wysocki P.C. Attorneys and Counselors at Law

of Supply & Engineering, regarding hiring Henning as a consultant to assist with its manufacturing operations.

9. Henning was asking for a fee of $3,500 per day.

10. On or about May 21, 2019, Vinnels emailed Henning an offer letter attached as Exhibit A. Under this proposal, Plaintiff would be responsible for the development of Defendants' stamping processes and capabilities.

11. In exchange, Henning would be paid a fee of $1,750 per day plus stock options:

> *6. Stock Option Program.* Reflecting your significant experience, Rivian will extend a stock option award only usually offered to permanent employees. Pending approval by the Board of Directors, you will receive an option to purchase shares of Rivian common stock. 200 shares in such option grant will vest at the end of each three-month period during your contract, provided you work 35 full days during that period.

12. Under this proposal, Henning could earn the equivalent of 800 options every twelve months.

13. Due to personal issues, Henning could not commit to that many days. In a telephone call with Vinnels, Henning offered to take $2,000 per day, $1,000 for travel days, and options on 300 shares each quarter.

14. Vinnels emailed Henning on May 22, 2019 with a revised offer. See email attached as Exhibit B and revised offer letter, attached as Exhibit C.

11656.101/2815271 3

That letter provided for $2,000 per day with $1,000 on travel days, plus 300 options for the 50-day work period.

15. Vinners also sent Henning a stock options Valuation Example for Rivian Automotive, Inc., attached as Exhibit D ("Valuation Example").

16. This was acceptable to Henning, who emailed Vinnels with the question; "If things go well and I work in excess of 50 days – which I hope to do, what are your thoughts?

17. Vinnels responded in an email on May 22, 2019 to Henning, attached as Exhibit E, "Then yes we can roll another 50 days with shares."

18. So Henning and Defendants agreed that Henning would receive 300 options for each 50-day work period.

19. On this basis, Henning and Rivian LLC executed an Independent Contractor Agreement effective May 28, 2019 (hereinafter "2019 Agreement"), a copy of which is attached hereto as Exhibit F.

20. Under the 2019 Agreement, Plaintiff was to act as a technical advisor for body stamping and manufacturing, develop stamping processes and capability, insure that die and stamping tooling specifications were comprehensive and appropriate, develop a detailed operating plan for the Company's press shop and then support the sourcing of the Company's stamping, tooling and handling troubleshooting.

Kotz Sangster Wysocki P.C. Attorneys and Counselors at Law

21. In exchange, Henning would be paid $2,000 per full work day and $1,000 per day for travel. In addition, Section A2(b) of the 2019 Agreement stated that Henning would receive certain stock options in Rivian Inc.:

> Subject to the approval of the Board of Directors of Rivian Automotive, Inc., the Independent Contractor will be granted an option to purchase 300 shares of common stock of Rivian Automotive, Inc. Such option will vest on the scheduled expiration date of the Agreement (provided that this Agreement is not terminated by the Company or the Independent Contractor prior to such date). The terms of such option granted will be set forth in grant documentation executed by the Independent Contractor and Rivian Automotive, Inc. and will be subject to the terms of the applicable Rivian Automotive, Inc. equity consent of plan.

22. The 2019 Agreement was signed by Plaintiff and Steve Gawronski, Vice President, Supply Chain for Rivian LLC.

23. The stock options were a material part of the 2019 Agreement. Otherwise, Plaintiff would have negotiated a pay rate of at least $3,500 per day rather than $2,000 per day.

24. In reliance on the 2019 Agreement, Plaintiff worked two 50-day periods in 2019, thereby earning two 300-share option blocks, for a total of 600 options.

25. At no point in 2019 did Defendants notify Plaintiff that Rivian Inc.'s Board of Directors had not approved the agreed-upon stock options. So

Henning continued working, believing he was earning not only the per-day pay, but also valuable stock options.

26. On or about January 30, 2020, Rob Walus, Director of Advanced Manufacturing sent Henning a letter, attached as Exhibit G (2020 Agreement) offering Henning the opportunity to work as a Technical Advisor – Body Stamping and Manufacturing in 2020.

27. According to the 2020 Agreement, Henning would work throughout 2020 at a rate of $2,000 per day, $1,000 for travel days. Specifically, Henning was to work a period of 48 days between January and May, another period of 48 days between June and September, and a third period of 36 days in October-December.

28. Henning would also receive stock options per "share offer per MV [Mark Vinnels] letter dated 5-20-18 (File name states 5-21-19-002)". In other words, Henning would receive the equivalent of 300 options for each work period.

29. Henning signed Exhibit G in the space marked "Acceptance."

30. Defendants did not disclose to Henning that in late 2019, Rivian Inc. common stock had split on a 50-to-1 basis.

31. So each block of 300 options in 2019 should now be 15,000 options in 2020 at a strike price adjusted for the split.

32. Henning's stock options on 300 shares were to be vested after each 50 days worked. In 2019, Henning completed the first 50-day block by September 4, 2019. He completed the second 50-day block by December 16, 2019. Accordingly, in 2019, Henning earned two pre-split 300-share stock option blocks from Defendants which were vested in 2019, which, post-split, were now 30,000 stock options

33. In 2020, Henning worked two of the periods contained in the 2020 Agreement and is entitled to two more blocks of stock options, this time 15,000 options in each block due to the 50-1 stock split for a total of 30,000 options.

34. Due to the split, Henning is entitled to 30,000 more options based on the work he did for Defendants in 2019.

35. Based upon the 2019 Agreement and the 2020 Agreement, adjusting for the stock split, Henning is entitled to 60,000 stock options at strike prices determined under the Rivian Automotive, Inc. equity incentive plan. at the end of each relevant work period.

36. Henning does not know what the strike prices were on the relevant vesting dates

37. In July 2020, Henning demanded the stock options he had earned in 2019. His demand was ignored.

38. In 2020, Defendants sent Independent Contractor Agreements to Henning which did not provide for any stock options. Henning refused to sign them.

39. Henning has also demanded from Defendants the 30,000 stock options he earned in 2020. Defendants have refused to issue the options to Henning.

## COUNT I: BREACH OF CONTRACT: Specific Performance

40. Henning incorporates by reference Paragraphs 1 through 39 as though fully stated herein.

41. In the 2019 and 2020 Agreements, Defendants agreed to issue Henning 300 stock options, to be adjusted for the stock split, for each of the four work periods he worked in 2019 and 2020, for a total of 1,200 pre-split options.

42. Adjusting for the stock split, Defendants agreed to give Henning 60,000 stock options on Rivian Inc. stock at a split-adjusted strike price determined as of the end of each of the four work periods consistent with the Rivian Inc. equity incentive plan.

43. Henning has performed all of his obligations under the 2019 and 2020 Agreements.

44. Defendants have breached the 2019 and 2020 Agreements by not issuing Henning the 60,000 stock options to which he is entitled.

45. The stock options are unique because their real value is determined when Rivian Inc. goes public. The Valuation Example stated: "The value of a Rivian Stock Option may fluctuate from time to time, and is subject to a number of different factors, many of which the company cannot control or predict."

46. The Valuation Example contained an illustration showing how each 100 pre-split block of options could produce as much as $456,816 profit to the holder if Rivian goes public at the same market capitalization as Tesla. That would be $5,481,792 in profit for Henning. To simply award Henning damages equal to the value of the options presently does not fully compensate Henning.

47. Upon information and belief, Rivian Inc. hopes to be the subject of an initial public offering within the next 12 months.

48. Specific performance is therefore appropriate.

WHEREFORE Plaintiff Terry Henning prays that this Court order Defendants to issue him 60,000 options on Rivian Automotive, Inc. common stock at the strike prices in existence for the applicable equity incentive plan as each of the 15,000 share option blocks became vested, plus costs and attorneys' fees.

### COUNT I: BREACH OF CONTRACT: Damages

49. Henning incorporates by reference Paragraphs 1 through 48 as though fully stated herein.

50. Defendants' breaches of the 2019 Agreement and 2020 Agreement have caused Henning to suffer damages.

51. If the Court declines to order specific performance of Defendants' agreements to issue stock options to Henning, the Court should award Henning damages based on the likely value of these options upon Rivian Inc. becoming a publicly-traded company.

WHEREFORE Plaintiff Terry Henning prays that this Court enter judgment is his favor and against Defendants in an amount in excess of $5,400,000 plus costs, interest and attorneys' fees.

## COUNT III: PROMISSORY ESTOPPEL

52. Henning incorporates by reference Paragraphs 1 through 51 as though fully stated herein.

53. Defendants unambiguously promised to issue 300 pre-split stock options to Henning for each block of work days he worked.

54. Defendants reasonably expected to induce Henning to sign the agreements with Defendants and perform the engineering services under those agreements to Defendants' benefit.

55. Henning reasonably relied on Defendants' promise to his detriment by reducing his daily fee from $3,500 per day to $2,000 per day, and in

Kotz Sangster Wysocki P.C. Attorneys and Counselors at Law

continuing to perform consulting services for Defendants in 2019 and then in 2020.

56. It would be unjust to not enforce Defendants' promises to Henning.

57. Henning has suffered a detriment in the form of not receiving the promised compensation in exchange for the work he performed for Defendants.

WHEREFORE Plaintiff Terry Henning prays that this Court order Defendants to issue him 60,000 options on Rivian Automotive, Inc. at the strike prices in existence for employee stock options as each of the 15,000 share blocks became vested, plus costs, interest and attorneys' fees. In the alternative, Plaintiff Terry Henning prays that this Court enter judgment is his favor and against Defendants in an amount in excess of $5,400,000 plus costs, interest and attorneys' fees.

**KOTZ SANGSTER WYSOCKI P.C.**

Dated: March 31, 2021
/s/Dennis K. Egan
By: Dennis K. Egan (P29116)
Attorneys for Plaintiff
36700 Woodward Avenue, Suite 202
Bloomfield Hills, Michigan 48304
(248) 646-1050
degan@kotzsangster.com